IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| VS. | § | NO. 3-02-CR-0285-M |
| | § | NO. 3-08-CV-1601-M |
| RAUL SAENZ-LOPEZ | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant Raul Saenz-Lopez, a federal prisoner, has filed a motion to correct, vacate, or set aside his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the motion should be dismissed on limitations grounds.

I.

In 2002, a federal grand jury charged defendant with one count of illegal reentry after deportation and one count of possession with intent to distribute cocaine. Defendant pled guilty to both counts of the indictment and was sentenced to 120 months confinement. No appeal was taken. On September 4, 2008, more than five years after his conviction became final, defendant filed a section 2255 motion alleging numerous constitutional errors in connection with his guilty plea and at sentencing. After giving defendant an opportunity to explain why his motion was not barred by the AEDPA statute of limitations, this court dismissed the motion as untimely. *United States v. Saenz-Lopez*, No. 3-08-CV-1601-M, 2009 WL 453932 (N.D. Tex. Feb. 23, 2009).

Defendant appealed the dismissal of his section 2255 motion on two grounds, both of which implicate the equitable tolling doctrine: (1) he was acting under a mistaken belief that his attorney

had filed a section 2255 motion on his behalf; and (2) the facility where he is incarcerated lacked a law library and was on lockdown for lengthy periods.[1] The Fifth Circuit granted a certificate of appealability and remanded the case for further proceedings to determine whether defendant is entitled to statutory or equitable tolling of the AEDPA limitations period. *United States v. Saenz-Lopez*, 361 Fed. Appx. 593, 2010 WL 183408 (5th Cir. Jan. 19, 2010). Regarding the alleged misrepresentations by counsel, the appeals court wrote:

> Saenz has provided assertions regarding counsel's situation and conduct, but he has not provided specific dates or supporting evidence as to when counsel assured him that he had filed a § 2255 motion on Saenz's behalf, when counsel became incapacitated for health reasons, when counsel recovered from his illness, the general time frames of Saenz's attempts to obtain information about the purportedly pending § 2255 motion, and the date upon which Saenz finally learned that no motion had in fact been filed. Further factual development is necessary to determine whether Saenz's reliance on counsel's actions and inaction entitles him to equitable tolling.

*Id.*, 2010 WL 183408 at *1. The Fifth Circuit was also unable to determine from the competing affidavits filed by the government and the declarations submitted by defendant when and for how long the Reeves County Detention Center ("RCDC"), the facility where defendant was incarcerated from and after March 2007, was on lockdown, and whether prisoners had access to legal materials during those lockdowns. *Id.*

On September 2, 2010, this court held an evidentiary hearing on the limitations issues presented in this case.[2] The Federal Public Defender was appointed to represent defendant at the

---

[1] This court rejected three other equitable tolling arguments raised by defendant in his reply. *See Saenz-Lopez*, 2009 WL 453932 at *3 (citing cases) (family illnesses, the deaths of several family members, and defendant's own medical problems are not "rare and exceptional circumstances necessary for equitable tolling"). Defendant did not challenge that aspect of the court's ruling on appeal.

[2] The evidentiary hearing was originally scheduled for April 28, 2010, but was postponed three times at the request of defendant. (*See* Docs. #46, 52, 55).

hearing. Having considered the evidence and written submissions of the parties, the magistrate judge reaffirms his prior recommendation that defendant's section 2255 motion is barred by limitations.

A.

Section 2255 proceedings are governed by a one-year statute of limitations. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996 ("AEDPA"), Pub.L. 104-132, 110 Stat. 1214 (1996), *codified at* 28 U.S.C. § 2255(f). The one-year limitations period runs from the latest of --

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* Recently, the Supreme Court made clear that the AEDPA statute of limitations is not a jurisdictional bar and may be equitably tolled in appropriate cases. *See Holland v. Florida*, ___ U.S. ___, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010). To establish entitlement to equitable tolling, a habeas petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.*, 130 S.Ct. at 2562, *quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005). "Courts must consider the individual facts and circumstances of each case in determining whether

-3-

equitable tolling is appropriate." *Mathis v. Thaler*, ___ F.3d ___, 2010 WL 3278609 at *9 (5th Cir. Aug. 20, 2010), *quoting Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

B.

Defendant was sentenced to 120 months in prison after pleading guilty to illegal reentry after deportation and possession with intent to distribute cocaine. The judgment of conviction was entered on May 16, 2003, and no appeal was taken. Therefore, defendant's conviction became final 10 days later on June 2, 2003.[3] *See United States v. Garcia-Mancha*, No. 2-96-CR-0021-J, 2001 WL 282769 at *2 (N.D. Tex. Mar. 15, 2001), *rec. adopted*, (N.D. Tex. Mar. 30, 2001) (where no appeal is taken, federal conviction becomes final for limitations purposes 10 days after judgment is entered). More than *five years* later, on September 4, 2008, defendant filed the instant motion in federal district court.

1.

In an attempt to excuse this delay, defendant blames his former attorney, Andy Konradi, for falsely representing that he had filed a section 2255 motion. "[A] garden variety claim of excusable neglect, such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Holland*, 130 S.Ct. at 2564 (internal citations and quotation marks omitted). However, equitable tolling may be available for more serious instances of attorney misconduct, such as when an attorney intentionally deceives his client into believing that a timely appeal or post-conviction proceeding was filed on his behalf. *See, e.g. United States v. Riggs*, 314

---

[3] Under the prior version of the federal rules, the deadline for filing a notice of appeal in a criminal case was 10 days after entry of judgment, excluding intermediate Saturdays, Sundays, and legal holidays. *See* FED. R. APP. P. 4(b)(1)(A) & 26(a)(2) (1998). Rule 4(b) has since been amended to extend the deadline for filing a notice of appeal to 14 days after entry of judgment. *See* FED. R. CIV. P. 4(b)(1)(A)(i) (2009).

F.3d 796, 799 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 2630 (2003); *United States v. Wynn*, 292 F.3d 226, 230-31 (5th Cir. 2002). Other instances of professional misconduct that fall short of bad faith, dishonesty, divided loyalty, mental impairment, and the like, may also create an extraordinary circumstance that warrants equitable tolling of the AEDPA statute of limitations. *See Holland*, 130 S.Ct. at 2563-64 (citing cases).

At the evidentiary hearing, Konradi testified that he met with defendant shortly after his sentencing in May 2003. During that meeting, Konradi said that he mentioned the possibility of obtaining a sentence reduction for defendant if the information he provided to law enforcement authorities rose to the level of substantial assistance. Konradi had a similar discussion with defendant's wife, Linda Saenz, around the same time. In September 2003, before Konradi could talk to the prosecutor or the case agent, he became incapacitated as a result of complications related to gastric bypass surgery. Konradi was hospitalized for nearly a year and did not resume his law practice until the end of 2004 or early 2005. As a result, no motion for sentence reduction was ever filed on behalf of defendant. While Konradi acknowledged speaking with defendant and his wife about the possibility of filing such a motion, he denied telling them that a motion for sentence reduction had been filed. Nor did Konradi ever tell defendant or his wife that he would file an appeal or a section 2255 motion. In fact, Konradi denied discussing with anyone the possibility of filing a section 2255 motion on behalf of defendant.

Linda Saenz also testified at the evidentiary hearing. According to Linda, she and Konradi discussed some kind of motion to have defendant's sentence reduced. If the motion was successful, Konradi told Linda that defendant would serve only "three to five years." That discussion occurred shortly after defendant was sentenced in May 2003. Six months later, Linda called Konradi to

inquire about the status of the motion. She left a message on his answering machine, but did not hear back from him. Linda said that she telephoned Konradi "two or three times a week" leaving messages for him to call. At some point, Konradi's wife finally called Linda and told her that Konradi was not practicing law due to health problems. Although Linda could not recall the exact date of that telephone conversation, she admitted it was more than one year after defendant was sentenced. All this information was communicated to defendant by Linda, who frequently visited her husband at FCI Seagoville until his transfer in March 2007. Despite knowing that Konradi had temporarily suspended his legal practice, Linda did not check with the court to determine whether a motion for sentence reduction had been filed. Sometime in 2008, Linda spoke with Konradi, who said that he was practicing part-time and would talk to the prosecutor about a sentence reduction for defendant. However, Linda admitted that Konradi never told her that he, in fact, had filed a motion for sentence reduction. Nor did Konradi ever discuss with Linda a section 2255 motion or habeas corpus petition. The only discussions between them involved obtaining a sentence reduction for defendant.

Defendant testified that he met with Konradi two or three times at FCI Seagoville shortly after his sentencing in May 2003. At those meetings, Konradi assured defendant that he was "handling the legal issues" and that defendant would be out in three to five years. Months later, defendant found out that Konradi was incapacitated. Although defendant said he understood from his discussions with Konradi that a motion for sentence reduction would be filed, neither he nor his wife ever checked with the court to inquire about the status of such a motion. Initially, defendant did not mention any discussions with Konradi about a section 2255 motion or habeas corpus petition. However, on cross-examination, defendant testified that Konradi told him before he became

incapacitated that a section 2255 motion had been filed. When pressed by the court on this issue, defendant again stated that he was told a section 2255 motion had been filed, but admitted that he only expected the motion to seek a sentence reduction based on substantial assistance provided by him to the government. Defendant was never told by his lawyer, nor did he expect, that a motion would be filed challenging the validity of his guilty plea or sentence.

It is clear to the court from the testimony of these witnesses that Konradi never represented to defendant or his wife that he would file a section 2255 motion challenging the validity of defendant's guilty plea, conviction, or sentence. Instead, Konradi only told defendant that he would file a motion for sentence reduction based on substantial assistance. That conclusion is supported by defendant's own admission that he never anticipated Konradi would file any kind of motion challenging his conviction or sentence. The court finds credible Konradi's testimony that he never discussed with anyone the possibility of filing an appeal or a section 2255 motion on behalf of defendant, and never told defendant or his wife that any kind of motion actually had been filed. Konradi's testimony is corroborated, at least in part, by Linda Saenz, who said that the only discussions she had with Konradi involved obtaining a sentence credit for her husband. Defendant's self-serving testimony to the contrary is not worthy of belief.

2.

Even if Konradi misrepresented to defendant that he had filed a section 2255 motion, equitable tolling is not warranted on the facts of this case. "Equity is not intended for those who sleep on their rights." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006), *quoting Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999), *cert. denied*, 121 S.Ct. 1124 (2001). The Supreme Court has clarified that the diligence required for equitable tolling purposes is "reasonable diligence," not

"maximum feasible diligence." *See Holland*, 130 S.Ct. at 2565. Here, neither defendant nor his wife contacted the court to inquire about the status of his purported section 2255 motion. Six months after sentencing, when Konradi allegedly told defendant that he had filed such a motion, Linda Saenz called Konradi to inquire about the sentence reduction for her husband. Although Linda said that she tried to call Konradi two or three times a week, she did not remember how long her efforts to reach him lasted. Sometime in 2004, Linda learned that Konradi had temporarily suspended his legal practice due to health problems and, presumably, passed that information on to her husband. Yet defendant, who unlike his wife assumed that a section 2255 motion was pending, took no action to protect his legal rights. In a pleading filed with the court, defendant offered the implausible explanation that "out of respect for counsel" he waited to see if Konradi would recover from his health problems. (*See* Doc. #3 at 5). Defendant did not elaborate on that explanation at the evidentiary hearing. In March 2007, *three years* after learning about Konradi's medical problems, defendant finally began researching his section 2255 motion.

The facts of this case can be easily distinguished from *Holland*. Unlike the defendant herein, the habeas petitioner in *Holland* diligently pursued his post-conviction remedies. As the Supreme Court observed:

> Holland not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar in an effort to have [his attorney] -- the central impediment to the pursuit of his legal remedy -- removed from his case. And, the *very day* that Holland discovered that his AEDPA clock had expired due to [his attorney's] failings, Holland prepared his own habeas petition *pro se* and promptly filed it with the District Court.

*Holland*, 130 S.Ct. at 2565 (emphasis in original). Here, defendant learned in 2004 that Konradi temporarily suspended his legal practice due to health problems, but took no action to inquire about the status of any section 2255 motion. On these facts, the court finds that defendant did not exercise reasonable diligence for the three-year period from 2004 until March 2007.

3.

In view of the findings that Konradi never told defendant or his wife that he would file a section 2255 motion, and that defendant did not diligently pursue his legal rights from 2004 until March 2007, the court need not decide whether defendant had access to legal materials after his transfer to RCDC. Nevertheless, as directed by the Fifth Circuit, the court will make additional findings regarding when and for how long RCDC was on lockdown, and whether prisoners had access to legal materials during those lockdowns.

At the evidentiary hearing, the parties stipulated that RCDC was on lockdown for a total of 27 days between March 2007 and September 2008:

> June 8-20, 2007;
>
> January 22-24, 2008;
>
> February 25, 2008;
>
> March 31, 2008;
>
> May 17-24, 2008; and
>
> July 8, 2008.

(*See also* Gov't Resp. App. at 21). While on lockdown, inmates were not permitted to visit the law library. (*Id.*). Testimony at the evidentiary hearing also revealed that many legal publications, such as the federal reporters, were not kept at RCDC until inmates started to request them in or around

January 2008. However, standard forms for filing section 2255 motions were available to prisoners upon request. In addition, the law librarian was able to obtain most legal materials requested by inmates from outside sources. No such requests were ever made by defendant.

## **RECOMMENDATION**

Defendant filed his section 2255 motion more than five years after the expiration of the AEDPA statute of limitations. On the facts of this case, there is no basis for statutory or equitable tolling of the limitations period. Accordingly, defendant's motion is time-barred and should be dismissed.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 8, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE